**The MANN–PALLER FOUNDATION, INC., Plaintiff,**

v.

**ECONOMETRIC RESEARCH, INC., Defendant.**

Civ. A. No. 85–2912.

United States District Court, District of Columbia.

July 25, 1986.

Mark A. Bayer, Mark B. Weinberg, Washington, D.C., for plaintiff.

Mark C. Ellenberg, Sheldon L. Pine, Washington, D.C., for defendant.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant's motions to strike plaintiff's jury demand and for summary judgment. In deciding a motion for summary judgment, the Court looks beyond the pleadings and may take into consideration affidavits, depositions, answers to interrogatories, and admissions on file, together with affidavits. Fed.R.Civ.P. 56(c). Upon careful consideration of the pleadings and the entire record herein, the Court grants the motion for summary judgment, which renders moot the motion to strike the jury demand.

### Background

Plaintiff, The Mann-Paller Foundation, Inc. (MPF), is a Maryland non-stock charitable and educational corporation whose principal place of business is in the State of Maryland. Defendant, Econometric Research, Inc. (ERI), is a Delaware corporation offering professional services as its principal business with its principal place of business in the District of Columbia. Jurisdiction of this Court is based on diversity. 28 U.S.C. § 1332 (1982).

MPF owns 35.4 percent of the outstanding shares of stock of ERI. The stock was donated to MPF on December 20, 1984, by Allan Paller, one of the four initial MPF stockholders. Dr. Stephan Michelson, the president of ERI and currently its sole director, owns 63.6 percent of the stock of ERI, and is ERI's majority stockholder.[1]

---

1. On January 2, 1984, the minimum number of directors which shall constitute the whole board

This lawsuit concerns the payment by defendant ERI of $347,745 to Dr. Michelson on January 8, 1985. Plaintiff, suing as an individual stockholder, alleges that this payment was made from the earnings of the corporation and constituted a distribution of dividends. Plaintiff states that it received no payment and alleges that there is a resulting debt of undistributed dividends owed to it by defendant. Plaintiff brings this action to recover from defendant corporation this debt, namely, its proportionate share of the allegedly declared dividend, which is $191,369.10.

In response to plaintiff's complaint, ERI states that ERI has never declared or paid a dividend to any shareholder. Defendant claims that the sum paid to Dr. Michelson represented compensation owed to Dr. Michelson, rather than a distribution of dividends. Therefore, defendant claims, there is no debt owing to plaintiff.

According to defendant's statement of the case, the compensation amount was determined according to a formula developed by ERI's independent accountants and adopted by ERI's board on July 26, 1983. ERI paid to Dr. Michelson the sum of $347,745, representing a portion of his accrued and deferred compensation as established under the formula, on January 8, 1985. On February 13, 1985, Dr. Michelson, the majority stockholder of ERI, ratified the compensation formula and the payment made thereunder by a Written Consent of Majority Stockholder pursuant to Del.Code Ann. tit. 8, § 228(a). ERI also states that the requisite notice of the taking of corporate action without a meeting of less than unanimous written consent, required by the statute, was given to the non-consenting stockholders, including MPF.

## Discussion

The arguments presented by the parties supporting and opposing both the motion to strike the jury demand and the motion for summary judgment center on the nature of the payment at issue. The disposition of both motions depends on that characterization.

In the motion to strike the jury demand, defendant argues that plaintiff's action is one seeking to compel the payment of a dividend, an action which is purely equitable. Plaintiff, in opposition, supports its demand for a jury trial by arguing that the payment made to Dr. Michelson, although labeled "compensation" by ERI, was actually a distribution of corporate profits. Therefore, a *de facto* dividend has been declared and distributed to ERI's majority stockholder. Plaintiff complains that a debt of their pro rata portion of that dividend resulting from its ownership of defendant's stock is owing to them. This action, plaintiff contends, seeks to recover a money judgment from ERI, which is a traditionally legal type of relief, giving rise to the right to a jury trial.

In its motion for summary judgment, defendant argues that plaintiff is challenging the payment as not properly authorized by appropriate corporate action either through proper approval or adoption by the Board of Directors, or proper ratification by the shareholders of ERI. Defendant argues that the payment was properly authorized, and even if it was not, Delaware law does not allow improper compensation to an employee-shareholder to be treated as a dividend. Defendant argues that plaintiff may not challenge the allegedly improper compensation in an individual action, but rather may only proceed in a shareholder derivative action. In the motion to strike the jury demand, defendant argues that plaintiff's action is one to compel a dividend.

Plaintiff takes a position in its opposition to the motion for summary judgment consistent with the position taken in its opposi-

---

of ERI was reduced from two to one, with the removal of Alan Paller and the appointment of Dr. Michelson as sole director. This action was adopted and approved effective February 13, 1985, by a Written Consent of Majority Stock-

holder of ERI, in lieu of a special meeting of stockholders on that date, pursuant to the Del. Code Ann. tit. 8, § 228(a) (1983). Response of ERI to Plaintiff's First Set of Interrogatories, exh. 2.

tion to the motion to strike the jury demand. Plaintiff argues that it does not rely on technical defects in the adoption of any purported compensation plan to support its theory of recovery. Rather, plaintiff relies on the underlying nature of the payment, based upon all the facts and circumstances surrounding it, as evidence of its dividend character and of plaintiff's right to receive a money judgment of a proportionately equal dividend. Because plaintiff seeks the payment of an alleged debt to it individually, rather than a return of monies to the corporation, it alleges that an individual action is appropriate. Plaintiff also argues that judicial scrutiny is necessary to ensure that the majority shareholder fulfills his fiduciary duty to minority shareholders. Plaintiff argues that defendant is not entitled to summary judgment as there are material issues of fact related to whether the payment was compensation or a dividend.

After carefully considering the pleadings and the entire record before it, the Court concludes that as plaintiff has currently framed its complaints, there does not exist a cognizable cause of action. Plaintiff has framed its cause of action as one seeking to recover a debt which was created by ERI by distributing a *de facto* dividend to Dr. Michelson. After what appears to have been a diligent search by both parties, and research by the Court, scant case law has been found dealing with whether, on facts similar to these, there exists a cause of action based on the theory of a *de facto* dividend, with the appropriate relief being a money judgment to the plaintiff shareholder. The Court concludes that plaintiff's complaint does not state a claim and the type of relief requested is not the type of relief available in these circumstances.

ERI is incorporated in Delaware, so the substantive law of Delaware governs the Court's disposition of plaintiff's common law claims. *See Cowin v. Bresler*, 741 F.2d 410, 414 n. 4 (D.C.Cir.1984); *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1268 (D.C.Cir.1972). The law of Delaware (like the law of other jurisdictions), is that

upon the declaration of a lawful dividend by a Board of Directors ... the relation of debtor and creditor is set up between the corporation and the stockholder.... [T]he declaration of the lawful dividend creates an obligation of the corporation and there exists a right of action on the part of the stockholder to enforce its payment. The right is in the nature of a contract and grows out of the declaration of a lawful dividend.

*Selly v. Fleming Coal Co.*, 37 Del. 34, 180 A. 326, 328 (Del.Super.1935); 11 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5365 (rev. perm. ed. 1986). *See also U.S. Industries, Inc. v. Anderson*, 579 F.2d 1227, 1230 (10th Cir.1978). The action brought in such a situation is an action at law. 11 W. FLETCHER, *supra*. Also, a wrongful withholding of dividends is the type of harm which may be remedied on an individual basis because it is a wrong inflicted on the stockholder alone, rather than the corporation. Therefore, the action properly would be brought as an individual cause of action. *Id. See Cowin, supra,* 741 F.2d at 415; *Crane Co. v. Harsco Corp.*, 511 F.Supp. 294, 304 (D.Del.1981); *Abelow v. Symonds*, 38 Del.Ch. 572, 156 A.2d 416, 419 (Del.Ch.1959); *Elster v. American Airlines, Inc.*, 34 Del.Ch. 94, 100 A.2d 219, 222 (Del.Ch.1953).

Plaintiff contends that the fact that ERI has never declared or paid a formal dividend should not prevent the Court from finding that the payment was a *de facto* dividend. Plaintiff supports its argument with a number of cases dealing with challenges to income tax determinations in which the form of payment did not prevent courts from identifying the transaction as a distribution of dividends and therefore taxable as a distribution of profits. *See, e.g., Petro-Chem Marketing Co. v. United States*, 602 F.2d 959, 961 (Ct.Cl.1979) ("The fact that there is undisputed evidence that the compensation paid to the plaintiff's officer-shareholders was reasonable does not entitle plaintiff to deduct the compensation to the extent that it is in reality a distribu-

tion of corporate earnings and not compensation for services rendered."); *Lengsfield v. Commissioner of Internal Revenue*, 241 F.2d 508, 510, 511 (5th Cir.1957) ("Whether or not a corporate distribution is a dividend or something else, such as . . . compensation for services rendered . . . presents a question of fact to be determined in each case. . . . [T]here is no requirement that a particular distribution be termed a dividend, or that there be a formal dividend declaration, or that all stockholders share in dividend distributions.").

Plaintiff has cited one non-tax case in which the court chose to follow the analysis used in tax cases in determining whether a payment was in fact a dividend, despite the corporation's alternate characterization. In *Alaska Plastics, Inc. v. Coppock*, 621 P.2d 270 (Alaska 1980), the Supreme Court of Alaska upheld a cause of action by an individual shareholder in a close corporation who alleged that she had been deprived of benefits awarded other shareholders. Although the trial court had not ruled on this issue as it was not originally one of plaintiff's requests for relief, the Supreme Court of Alaska determined that there was evidence that the corporation had made payments to certain shareholder-directors from which plaintiff was excluded. The court remanded the case to the trial judge to make appropriate findings of fact as to whether such payments were dividends and whether plaintiff was entitled to share in them.[2]

■ The Court concludes that the motivation and analysis found in decisions discussing the Internal Revenue Service's characterization of corporate distributions as dividends for tax purposes are quite different from those present in an action seeking to characterize a payment as a *de facto* dividend for purposes of ordering a further distribution of dividends. It is settled law in Delaware, and elsewhere, that the declaration and payment of a dividend rests in the discretion of a corporation's board of directors in the exercise of its business judgment. *Gabelli & Co. v. Liggett Group, Inc.*, 479 A.2d 276, 280 (Del. 1984) (equitable action to compel payment of dividend).; 11 W. FLETCHER, *supra*, at § 5320. The deference shown to a board of directors' decision, as exemplified by the showing required to be made in an action to compel a dividend (which is discussed below), leads the Court to conclude that the fact that courts reviewing tax appeals may feel more free to determine a payment to be a dividend for tax reasons does not allow the Court the same liberty in determining whether a board of directors has declared a dividend in which all shareholders have the right to share. For this reason, as well as the fact that it is Delaware law which controls this action, the Court finds *Alaska Plastics* to be unpersuasive.

The closest Delaware case to the facts presented here appears to be *Wilderman v. Wilderman*, 315 A.2d 610 (Del.Ch.1974). In *Wilderman*, the Court of Chancery of Delaware, which sits in equity, was asked by plaintiff, a 50% owner of a closely-held corporation, to order that allegedly excessive payments made by and to the defendant, the other owner, be returned to the corporate treasury and treated as corporate profits. Plaintiff requested the distribution of the profits as dividends. The controversy in that case centered around the amount of compensation defendant had caused to be paid to himself. The compensation had its origin in a policy designed to avoid corporate taxation by paying out net corporate profits in the form of executive compensation to avoid double taxation. After analyzing the compensation history of the corporation and the reasonableness of the compensation paid to defendant, the court concluded that portions of the compensation were excessive. The court ordered the return of these excessive portions to the corporation, but refused to order a declaration of dividends. The court stated that "what should be appropriate

---

**2.** On remand, the question of whether the payments were dividends was not addressed, as the judge ordered a remedy of a forced buy-out of plaintiff's shares, which was upheld on appeal. *Stephano v. Coppock*, 705 P.2d 443 (Alaska 1985).

dividends payable out of the reconstructed net profits of the company after the adjustments here directed to be made is, I believe, a matter for the board of directors in the first instance and in the event of deadlock for the custodian." *Id.* at 616.

The plaintiff in *Wilderman*, unlike plaintiff here, directly alleged excessive compensation and therefore asked as relief the return of profits to the corporation. Additionally, however, the plaintiff asked, as does plaintiff here, for a payment of a dividend which the court declined to give, deferring instead to the corporation's board of directors. In another Delaware case, *Keenan v. Eshleman*, 23 Del.Ch. 234, 2 A.2d 904 (Del.1938), involving a derivative action challenging the payment of management fees to another company by interested directors who stood to benefit from the payments, the Delaware Supreme Court refused to regard the misappropriated fees "as a fund for a dividend in which the dissenting shareholders are to share...." *Id.* at 912. The court stated that: "[T]he best method to work out the rights of the parties in a case of this kind is to preserve the fiction of corporate entity," *id.*, and ordered the entire recoverable amount to be repaid to the corporation.

Plaintiff argues that the case now before the Court closely resembles *Erdman v. Yolles*, 62 Mich.App. 594, 233 N.W.2d 667 (Mich.App.1975). In that case, the Court of Appeals of Michigan affirmed the trial judge's written opinion on a claim of wrongful depletion of assets for which plaintiff sought damages. In *Erdman*, four shareholders operated a business, taking out profits in the form of salaries. No dividends were specifically declared. After plaintiff left the employ of the corporation, the other shareholders liquidated certain corporate assets, and distributed the cash in the form of salaries. The court held that the profits of the corporation were distributed through salary increases and that the supplemental distributions constituted a dividend whether denominated as such or not. *Id.* 233 N.W.2d at 669. The court

found that a dividend had been declared and that plaintiff, as a shareholder, was entitled to his share in his individual capacity.

MPF has submitted with its pleadings an affidavit of Alan Paller, the donor of the stock to MPF, stating that he was told by Dr. Michelson that sums paid to him as salary for serving as vice-president of ERI were distributions of profits. Although this affidavit does create a material issue of fact about whether salaries paid by ERI were purely for services rendered or were in part or wholly a distribution of profits, it does not allow this Court to proceed as did the *Erdman* court. *Erdman* is not controlling law here. Additionally, the key factor in *Erdman* was the fact that the remaining employee-shareholders were distributing profits through the liquidation of corporate assets which had been funded by all the original shareholders, which is not the case here.

■ The Court concludes that plaintiff's complaint, as framed, does not state a cause of action upon which relief may be granted. For this reason, the Court does not find it necessary to decide whether this cause of action, if it could be maintained, provides plaintiff the right to a jury trial. The Court grants defendant's motion for summary judgment as a matter of law. The motion is granted for the cause of action as alleged in the complaint, and not for other causes of action which defendant argues in its pleadings that plaintiff is alleging.

■ Defendant argues in part that plaintiff's action is one to compel a dividend. The Court does not find this to be the case currently, as plaintiff has not alleged or argued the requirements for such a cause of action. "A proceeding to compel directors to declare and pay a dividend is of an equitable nature, and a court of equity is the proper tribunal in which to institute the action." 11 W. FLETCHER, *supra*, at § 5326.[3] In an action to compel the pay-

---

**3.** The proposition that actions to compel the

declaration of dividends are to be brought be-

ment of dividends, each shareholder may sue individually for his own account. *See Cowin, supra*, 741 F.2d at 415; *Knapp v. Bankers Securities Corp.*, 230 F.2d 717, 721 (3d Cir.1956). *See also Elster, supra*, 100 A.2d at 222. Delaware law provides that courts may act to compel the declaration of a dividend only upon a demonstration "that the withholding of it is explicable only on the theory of an oppressive or fraudulent abuse of discretion" by the board of directors. *Gabelli & Co., supra*, 479 A.2d at 280 (quoting *Eshleman v. Keenan*, 194 A. 40, 43 (Del.Ch. 1937)). The action pending before the Court clearly is not framed as one to compel a dividend, and therefore the Court will not comment on the merits of such an action based on the facts of this case.

Defendant also argues that this action is one alleging improper compensation to a shareholder-employee. Defendant contends that, based on such a cause of action, it is entitled to summary judgment as a matter of law as the corporation, and later the majority shareholder, properly ratified the payment. Defendant also claims that since plaintiff does not contend that the payment to Dr. Michelson was excessive, but instead that it constituted a *de facto* dividend, the payment was not made in bad faith and therefore there is no material issue of fact concerning good faith or intrinsic fairness of the payment.

The Court does not find that this issue is currently presented to the Court in a form appropriate for resolution by a motion for summary judgment. In plaintiff's answers to interrogatories, plaintiff states that it makes no allegation of excessive compensation *per se* at this time. Rather, plaintiff consistently has pursued a *de facto* dividend cause of action. Plaintiff has stated in its opposition to the motion for summary judgment that a factual issue remains as to

whether the payment formula properly was revealed and whether the payment properly was ratified. Additionally, plaintiff contends that there remains a factual issue as to whether the majority shareholder violated his fiduciary duty to minority shareholders with regard to this transaction. *See Fliegler v. Lawrence*, 361 A.2d 218, 221 (Del.1976).

Because an improper or excessive compensation cause of action is not currently before the Court, the Court may not rule dispositively upon it. If such an action were to be brought, it would have to be brought derivatively, rather than individually, as the harm falls equally on all shareholders. *See Cowin, supra*, 741 F.2d at 414; *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del.1970); *Elster, supra*, 100 A.2d at 222. In *Wilderman*, the court discussed the factors relevant to a determination of excessive compensation in a case such as this.

> [A]lthough courts are hesitant to inquire into the reasonableness of executive compensation when it is fixed by a disinterested board, the standard for fixing executive compensation is obviously more strict when it is fixed by the recipient himself. And where ... the recipient's vote as a director was necessary to the fixing of the amount of compensation, then the burden of showing the reasonableness of such compensation clearly falls upon its recipient [*sic*]. This is so, of course, because of the fiduciary position which directors hold towards their corporation and its stockholders.

315 A.2d at 615 (citations omitted).

In conclusion, the Court finds that plaintiff's complaint does not state a cognizable cause of action and therefore grants defendant's motion for summary judgment

---

fore a court of equity or are appropriate actions for the exercise of a court's equitable powers has been approved by the United States Court of Appeals for the Second Circuit, *Barclay v. Wabash Ry. Co.*, 30 F.2d 260, 267 (1929), *rev'd on other grounds*, 280 U.S. 197, 50 S.Ct. 106, 74 L.Ed. 368 (1930); Third Circuit, *Knapp v. Bank-* *ers Securities Corp.*, 230 F.2d 717, 720 (1956); Fifth Circuit, *Doherty v. Mutual Warehouse Co.*, 245 F.2d 609, 611 (1957); Seventh Circuit, *Santarelli v. Katz*, 270 F.2d 762, 768 (1959); and Tenth Circuit, *United States v. Gates*, 376 F.2d 65, 78 (1967).

and does not rule on the motion to strike the jury demand.[4]

---

**4.** As a final matter, plaintiff has moved for the appointment of a receiver to manage defendant's assets in order to protect monies for payment of plaintiff's claim. As this Court has granted defendant's motion for summary judgment, there is no longer any basis upon which the Court may grant the motion for appoint-

ment of a receiver. *Campbell v. Pennsylvania Industries, Inc.,* 99 F.Supp. 199, 207 (D.Del. 1951). Accordingly, the Court denies plaintiff's motion for appointment of a receiver. The Court also denies plaintiff's request for sanctions.