AMERICAN ELECTRICAL STEEL COMPANY v SCARPACE

OPINION OF THE COURT

1. VENDOR AND PURCHASER—CONTRACTS—SALE OF LAND—TENANTS BY
   THE ENTIRETIES—POWER OF ATTORNEY.

   A contract for the sale of land cannot be enforced where the land
   was owned by husband and wife as tenants by the entireties
   and the wife signed the contract for her husband under a
   power of attorney which was invalid because the husband was
   suffering from mental illness at the time he signed the power of
   attorney.

2. ESTOPPEL—PROMISSORY ESTOPPEL—AVOIDING INJUSTICE.

   In order for the doctrine of promissory estoppel to be invoked the
   promisee must demonstrate that the promise was made in
   circumstances such that the promise must be enforced if injus-
   tice is to be avoided.

3. ESTOPPEL—EQUITABLE ESTOPPEL—PREJUDICE.

   Equitable estoppel requires the complaining party to show that
   he will be prejudiced in some way unless the other party is
   estopped to deny something.

4. ESTOPPEL—VENDOR AND PURCHASER—SALE OF LAND—SPECIFIC PER-
   FORMANCE—COMPENSATION FOR EXPENSES.

   Estoppel is not a proper basis for an action to enforce a contract
   for the sale of real estate where there is no indication that the
   plaintiff buyer will suffer any injury if the land is not conveyed;
   although specific performance is not called for, the plaintiff

REFERENCES FOR POINTS IN HEADNOTES

[1] 77 Am Jur 2d, Vendor and Purchaser § 165.

[2] 28 Am Jur 2d, Estoppel and Waiver §§ 48, 49.

[3, 7, 8] 28 Am Jur 2d, Estoppel and Waiver § 26 *et seq.*

[4] 77 Am Jur 2d, Vendor and Purchaser § 238.

[5, 6] 71 Am Jur 2d, Specific Performance §§ 83, 84.

Change of conditions after execution of contract or option for sale of
real property as affecting right to specific performance. 11 ALR2d
390.

[9] 77 Am Jur 2d, Vendor and Purchaser § 210 *et seq.*

should be compensated for the expenses incurred in preparing to purchase the defendant's property.

5. SPECIFIC PERFORMANCE—LACHES—CONTRACTS—VALUE OF LAND.

An action for specific enforcement of a contract to sell land is barred by laches where the plaintiff purchaser did nothing to enforce the contract for more than three years after the defendant seller breached the agreement, during which time the value of the land greatly increased.

DISSENT BY J. H. GILLIS, P. J.

6. VENDOR AND PURCHASER—CONTRACTS—LACHES—APPEAL AND ERROR—FINDINGS OF FACT—RECORD SUPPORT.

*The Court of Appeals cannot* sua sponte *invoke the doctrine of laches to prevent a plaintiff purchaser from enforcing a contract for the sale of land where neither party raised the issue in the lower court nor mentioned it on appeal, and where a finding that the plaintiff did nothing to enforce the contract for three years is not supported by the record.*

7. ESTOPPEL—ELEMENTS OF ESTOPPEL—CONDUCT OF PARTIES.

*Estoppel is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the act of the party himself, express or implied; if one party's conduct induces another to believe in the existence of certain facts, and the other party acts thereon to his prejudice, the former party is estopped to deny that the state of facts does in truth exist.*

8. ESTOPPEL—ESTOPPEL IN PAIS—SALE OF LAND—POWER OF ATTORNEY—VALIDITY OF CONTRACT.

*The doctrine of estoppel in pais prohibits a defendant wife from attempting to question the validity of a power of attorney in order to invalidate an agreement to sell land where she has previously represented that the power of attorney, executed by her husband, was valid.*

9. VENDOR AND PURCHASER—CONTRACTS—SALE OF LAND—BREACH OF CONTRACT—HARM SUFFERED—LAND AS UNIQUE COMMODITY.

*Land is thought to be a unique commodity under our legal system; therefore, a plaintiff corporation was harmed by the breach by a defendant of an agreement to sell land to the plaintiff where the plaintiff had secured the rezoning of the defendant's property and later had to purchase other property.*

Appeal from Wayne, George T. Martin, J. Submitted October 7, 1975, at Detroit. (Docket No. 21198.) Decided February 9, 1976. Leave to appeal applied for.

Complaint by American Electrical Steel Company against Olga Scarpace for specific performance of an agreement for the sale of land. Judgment for defendant. Plaintiff appeals. Affirmed.

*Kahn & Kahn* (by *Kenneth F. Kahn* and *Larry E. Powe),* for plaintiff.

*Gerald Curtis,* for defendant.

Before: J. H. GILLIS, P. J., and BRONSON and T. M. BURNS, JJ.

T. M. BURNS, J. Plaintiff seeks specific performance of a land sales contract.

Defendant and her husband owned as tenants by the entireties certain land in Taylor, Michigan. Needing to raise money to pay an assessment made by the IRS for a tax deficiency, Mrs. Scarpace put the land up for sale. In 1969, Mrs. Scarpace and plaintiff entered into an agreement whereby plaintiff would purchase and defendant would sell the real estate. Mrs. Scarpace signed the agreement in her own capacity and for her husband under a power of attorney executed several months before. Defendant later refused to consummate the transaction.

More than three years later, plaintiff brought this suit for specific performance. The trial judge denied the relief ruling that the power of attorney executed by the husband did not include the power to sell jointly held property. Plaintiff appeals.

1. There is no valid contract which we can order to be enforced because the power of attorney was invalid. Mr. Scarpace was hospitalized with brain atrophy early in 1967, before the power of attorney was executed. He was unable to manage his business, and after the power was signed by him, Mr. Scarpace was adjudicated mentally incompetent. The record indicates that Mr. Scarpace was suffering from mental illness at the time the document was signed. It was thus invalid.

2. It is claimed that by the death of her husband, Mrs. Scarpace became the sole owner of the real estate, and that she should be estopped from denying her agreement to sell the land. Under the facts of this case, estoppel is not a proper theory. For the doctrine of promissory estoppel to be invoked, the promisee must demonstrate that the promise was made in circumstances such that the promise must be enforced if injustice is to be avoided. *In re Timko Estate,* 51 Mich App 662; 215 NW2d 750 (1974). For equitable estoppel, the complaining party must show that he will be prejudiced in some way unless the other party is estopped to deny something. *Kole v Lampen,* 191 Mich 156; 157 NW 392 (1916). There is no indication in the case at bar that plaintiff will suffer any injury if the land is not conveyed to it. Indeed, it appears that such a result would be a windfall. The corporation has obtained the use of other property for the purpose for which it sought defendant's land. There is no indication that the present facilities are less to plaintiff's liking or less suitable for its needs. Surely plaintiff should be compensated for the expenses it incurred in preparing to purchase defendant's property, but specific performance of the agreement to sell the property is uncalled for.

3. Plaintiff's action for specific performance is

barred by laches. The invalid agreement to sell the land was breached in 1969. Between that time and the date this suit was commenced below, a period of three years, plaintiff did nothing to enforce the contract. While plaintiff sat on its rights, the value of the defendant's land greatly increased. Plaintiff now asks this Court to force defendant to sell her land to plaintiff at the price agreed upon six years ago. To accept plaintiff's plea would be an unconscionable act.

Affirmed.

BRONSON, J., concurred.

J. H. GILLIS, P. J. *(dissenting).* Because I believe the majority opinion is contrary to basic principles of equity and contract law, I dissent.

The factual basis for this appeal is as follows: Defendant, Olga Scarpace, and her husband, Laurence, owned, as tenants by the entireties, a parcel of land in Taylor, Michigan. In 1969, Olga Scarpace listed the land for sale with the Earl Keim Realty Company. After some negotiations, she accepted American Electrical Steel Company's (hereinafter referred to as American) offer to purchase. American gave a $500 deposit to her real estate agent. When Mrs. Scarpace accepted the offer to purchase, she signed both her name and that of her husband, adding "P.A." after the latter signature to indicate that she was vested with his power of attorney. At all times during the negotiations, she stated that she was so empowered. She also exhibited a document to both her broker and American, entitled "Power of Attorney", which she claimed her husband had executed.

One of the conditions of the sale was that the seller petition the City of Taylor for a rezoning of the property. After waiting a period of time,

American, at some expense, sought and obtained the zoning variance. Nonetheless, Mrs. Scarpace refused to consummate the transaction; the property was never sold.

American sued the defendant, requesting the court to order specific performance of the agreement. Mrs. Scarpace defended on the theory that her husband was incompetent at the time he executed the power of attorney, and that even if he was competent, the power of attorney did not authorize her to sell jointly held property. Thus, she claimed that his signature was null and void, and because she and her husband held the property by the entireties, her signature alone was insufficient to ratify the agreement.[1] After hearing the evidence, the trial judge ruled that the power of attorney given to Mrs. Scarpace did not include the power to sell jointly held property. He thus denied the requested specific performance, but ordered defendant to repay American the money expended in securing the rezoning.

Under the majority opinion, plaintiff is denied specific performance on two bases: 1) laches, and 2) failure to show detriment under a promissory estoppel theory. These holdings bear examination.

The majority indicates that plaintiff's action for specific performance is barred by laches. Now this holding will undoubtedly come as a surprise to both plaintiff and defendant. It ought to because at no time during the lower court proceedings did either party attempt to argue the doctrine of laches. The issue is not mentioned on appeal. The majority has *sua sponte* raised the point. The law in this area is clear. In *Boden v Renihan,* 299 Mich 226, 241; 300 NW 53, 59 (1941), our Supreme Court

---

[1] Defendant's husband died two years prior to the commencement of this lawsuit.

held that if the defense of laches was not raised by a party in the lower court, the issue could not be considered by an appellate court. The obvious implication of this decision is that if the Supreme Court could not consider the defense of laches when raised for the first time on appeal, the Court of Appeals clearly can not consider it when it has never been raised.[2]

Furthermore, the majority states that during the three-year period following the breach, the plaintiff "did nothing to 'enforce' the contract". The record does not support this conclusion; the record is simply silent on this point. The majority has no basis for concluding that nothing was done during the three-year gap. The questions of why plaintiff waited three years to sue, and what efforts it made to settle during the interim, were not dealt with at the trial. They were irrelevant until the majority raised the laches issue.

The majority deals with the estoppel question by applying the principles of "promissory estoppel". This doctrine, however, is inapplicable here. Traditionally, the "promissory estoppel" doctrine is applied when "legal" consideration is missing from a contractual agreement. The classic situation involves a gratuitous promise made by the promisor, with the promisee not offering anything in exchange. In some cases involving gratuitous promises, courts find consideration flowing from the promisee's reasonable reliance on the promise, if the promisee relies to his detriment. See 1 Willi-

---

[2] It has long been the holding of this Court that the failure to either raise an issue on appeal or to brief it properly precludes our considering it. *See, Kucken v Hygrade Food Products Corp*, 51 Mich App 471, 473; 215 NW2d 772, 773 (1974), *Erdman v Yolles*, 62 Mich App 594, 599; 233 NW2d 667 (1975), *County of Ingham v Dept of Social Services*, 62 Mich App 683, 685 n 1; 233 NW2d 833 (1975), *People v Sims*, 62 Mich App 550, 555; 233 NW2d 645 (1975).

ston on Contracts (3d ed), § 140, pp 607–620; Cala-
mari and Perillo, Contracts, § 105, p 179 (1970).

The principle that properly controls this case is
that of "equitable estoppel" or "estoppel in pais".
Estoppel in pais operates to prohibit a person who
has made a knowing misstatement of fact from
later denying the truth of that statement. See
Williston, *supra*, § 139, pp 601–604. The Michigan
Supreme Court states the rule as follows:

"Estoppel is a bar which precludes a person from
denying the truth of a fact which has in contemplation
of law become settled by the act of the party himself,
express or implied. If one's conduct induces another to
believe in the existence of certain facts, and the other
acts thereon to his prejudice, the former is estopped to
deny that the state of facts does in truth exist." (Cita-
tions omitted.) *Detroit Savings Bank v Loveland,* 168
Mich 163, 172; 130 NW 678, 682 (1911).

See also, *Maxwell v Bay City Bridge Co,* 41 Mich
453; 2 NW 639 (1879), *Hetchler v American Life
Insurance Co,* 266 Mich 608; 254 NW 221 (1934).

The doctrine of promissory estoppel does not
apply to the facts of this case, then, because this
Court ought not examine the validity of the exe-
cuted power of attorney. Mrs. Scarpace repre-
sented to both plaintiff and her broker that she
was empowered to sign for her husband. She
signed the purchase agreement in her name and
for her husband. The purchase agreement is valid
on its face. The doctrine of estoppel in pais prohib-
its Mrs. Scarpace from questioning her husband's
competency or the validity of the power of attor-
ney. That being the case, the contract was valid,
adequate consideration was present, and the doc-
trine of promissory estoppel is irrelevant.

Finally, the majority states that plaintiff has

suffered no harm because of defendant's breach. This statement is clearly wrong. Plaintiff did not attempt to purchase other property at the time it contracted with Mrs. Scarpace, because it felt that she would honor her contract. Plaintiff later had to purchase other property, and as the majority points out, property prices had since risen. Plaintiff also secured the rezoning of defendant's property.

The majority also intimates that plaintiff suffered no harm because it was later able to purchase other land. No citation need be given for the proposition that land is thought to be a unique commodity under our legal system. Plaintiff has a right to defendant's land; it is harmed in not getting it. Furthermore, no testimony was taken as to plaintiff's costs in securing the other piece of property because no one at the trial stage thought it relevant. There is no support in this record for the majority's conclusion that plaintiff is unharmed.

In conclusion, we have a situation here where the majority is aiding a defendant who has no equities in her favor. Mrs. Scarpace lied to the plaintiff and breached her contract. Because her husband has since died, she now owns the property outright. The wrongdoer is now the only party benefiting from her own wrongdoing. This is not equity.

I dissent.